*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WELLS FARGO RAIL CORP,

Plaintiff-Appellant,

v

STATE OF MICHIGAN, DEPARTMENT OF
TREASURY, and STATE TAX COMMISSION,

Defendants-Appellees.

FOR PUBLICATION
December 1, 2022
9:10 a.m.

No. 359399
Court of Claims
LC No. 21-000167-MT

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

HOOD, P.J.

Plaintiff, Wells Fargo Rail Corp (WFRC), appeals as of right the Court of Claims's decision granting summary disposition in favor of defendants, the State of Michigan (the State), the Department of Treasury (Treasury), and the State Tax Commission (the Commission). The Court of Claims held that it lacked subject-matter jurisdiction to hear WFRC's case because the Tax Tribunal Act (TTA), MCL 205.701 *et seq.*, implicitly repealed MCL 207.15, a provision of the Public Utility Tax Act (PUTA), MCL 207.1 *et seq.*, that allowed a taxpayer to file suit in the Court of Claims. The Court of Claims held that the Michigan Tax Tribunal (MTT) had exclusive and original jurisdiction over this case. We affirm in part, reverse in part, and remand to the MTT for further proceedings.

## I. BACKGROUND

This case arises from a dispute over tax credits related to railcars that WFRC owns. WFRC is in the business of owning and leasing railcars. WFRC's railcars are personal property against which the State assesses tax under the PUTA. On March 17, 2021, WFRC filed an annual property report with Treasury. The report showed the value of the railcars and the maintenance costs incurred during 2020. WFRC claimed a tax credit for maintenance and improvement of the railcars under MCL 207.13a.

Later in 2021, the Treasury issued a tax bill which did not include the requested maintenance credit. If it were applied, the credit would have resulted in a $0 tax liability for WFRC. Treasury sent a letter to WFRC, stating that because WFRC submitted its credit request

-1-

by mail instead of using an online form, Form 1027 (Annual Property Report for State Assessed Car Loaning, Stock Car, Refrigerator and Fast Freight Line Companies and Other Car Companies), as required, Treasury viewed the request as untimely and would not consider it. Instead of the $0 tax liability WFRC expected, defendants' letter included a tax bill for $172,249.72. In response, WFRC sent a letter to Treasury on July 28, 2021, which it described as a "formal protest of the property tax liability assessed" on WFRC property. The letter included a check for $86,124.86, half of the assessed tax. The letter claimed that WFRC timely submitted WFRC's 2021 property tax return via mail on March 17, 2021, and requested that defendants refund the amount owed and paid under protest.

On August 26, 2021, WFRC sued the State, Treasury, and the State Board of Assessors[1] in the Court of Claims, alleging one claim: failure to apply the maintenance credit in MCL 207.13a to WFRC's 2021 tax assessment. In its complaint, WFRC sought the following relief: (1) "[o]rder [Treasury] to apply the maintenance credit to the 2021 tax assessment"; (2) "[o]rder [Treasury] to reissue a new tax bill reflecting the correct assessment of the Public Utility Tax in the amount of $0, with the correct statutory [sic] mandated maintenance credit"; (3) "[r]efund the overpayment of the 2021 Public Utility Tax paid in the amount of $86,124.86"; and (4) provide any other relief the court deemed appropriate. The complaint asserted that MCL 207.15 gave the Court of Claims jurisdiction to hear the case.

Defendants moved for summary disposition under MCR 2.116(C)(3), (4), and (8). They argued that the Court of Claims lacked subject-matter jurisdiction over this case and that, instead, the MTT had "exclusive and original" jurisdiction over WFRC's claim. Defendants asserted that this case involved the denial of a railroad company credit and a request for a refund of a partial tax payment, which came under the MTT's jurisdiction under MCL 205.731(a) and (b). Defendants also argued that the TTA repealed a portion of MCL 207.15 by implication. They asserted that the TTA "occupies the entire field of issues related to appeals of the Public Utility Tax detailed in MCL 207.15" and, therefore, the MTT had exclusive and original jurisdiction over WFRC's request to apply the credit and for a redetermination of its tax liability.

WFRC moved to amend its complaint and responded to defendants' motion for summary disposition. In its response, WFRC argued that MCL 207.15 and the Court of Claims Act, MCL 600.6401, *et seq.*, vested jurisdiction in the Court of Claims. It emphasized that it was not contesting the value of any property; rather, it sought application of the credit, for which it claims it timely applied. WFRC argued that MCL 207.15, which explicitly states that a taxpayer paying a tax under protest can sue in the Court of Claims, and the Court of Claims Act vested jurisdiction in the Court of Claims.

On November 8, 2021, the Court of Claims granted WFRC's motion to amend its complaint and granted defendants' motion for summary disposition, concluding that it lacked subject-matter jurisdiction to hear WFRC's case. The Court of Claims concluded that there was an irreconcilable difference between the TTA and the jurisdictional section of the PUTA, and that the TTA controlled. The Court of Claims explained that the TTA, under MCL 205.731, granted

_____

[1] As will be discussed later, WFRC amended its complaint to remove the State Board of Assessors as a defendant and, instead, add the State Tax Commission as a defendant.

the MTT exclusive jurisdiction over property tax law issues and found that the TTA defined "property tax laws" "in a way that would encompass all 'property tax laws,' that have been designated as such," except for one exception under MCL 205.703(f) (explicitly excluding a single category of "property tax laws" arising under the Drain Code, MCL 280.1 *et seq.*). Thus, the Court of Claims concluded that the tax imposed on property under the PUTA constituted a "property tax." Relying on several sections within the TTA, the Court of Claims also concluded that the Legislature intended to vest the MTT with exclusive jurisdiction over almost all property tax cases, including those previously heard in other forums. Despite recognizing the strong presumption against repeal by implication, the Court of Claims concluded that the Legislature intended the TTA to "occupy the entire field of property tax disputes and to repeal the grant of jurisdiction afforded" to the Court of Claims in the PUTA. The court found "that the Tax Tribunal's jurisdiction is 'exclusive and original' over proceedings for direct review of agency decisions relating to assessments 'under the property tax laws of this state.' " Finding it lacked subject-matter jurisdiction, the Court of Claims granted summary disposition.

This appeal followed.

## II. STANDARD OF REVIEW

Although defendants moved for summary disposition under MCR 2.116(C)(3), (C)(4), and (8), the Court of Claims granted the motion for lack of subject-matter jurisdiction under MCR 2.116(C)(4). "This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

Summary disposition under MCR 2.116(C)(4) is proper when a "court lacks jurisdiction of the subject matter." MCR 2.116(C)(4). "For jurisdictional questions under MCR 2.116(C)(4), this Court determines whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject matter jurisdiction." *Summer v Southfield Bd of Ed*, 310 Mich App 660, 668; 874 NW2d 150 (2015) (quotation marks, citations, and alterations omitted). The issue of subject-matter jurisdiction presented in this case involves questions of statutory interpretation and constitutional law, which we review de novo. *Midland Cogeneration Venture Ltd Partnership v Naftaly*, 489 Mich 83, 89; 803 NW2d 674 (2011).

> The goal of statutory interpretation is to determine and apply the intent of the Legislature. The first step in determining legislative intent is to examine the specific language of the statute. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole. This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. [*Yopek v Brighton Airport Ass'n, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359065); slip op at 4-5 (quotation marks and citations omitted).]

## III. SUBJECT-MATTER JURISDICTION

WFRC argues that the Court of Claims erred when it determined that the TTA repealed by implication MCL 207.15. We disagree.

## A. THE PUBLIC UTILITY TAX ACT AND THE TAX TRIBUNAL ACT

This case turns on whether an irreconcilable conflict exists between the jurisdictional grants within the PUTA and the TTA. At the threshold, we consider the background of each statute.

WFRC argues that the Court of Claims had subject-matter jurisdiction over this case under the PUTA. The PUTA authorizes the Commission to impose a tax on the "property" of railroad companies, among other entities. See MCL 207.4(1). "Property" is defined in the PUTA as, in relevant part:

> all property, real or personal, belonging to the persons, corporations, companies, copartnerships, and associations subject to taxation under this act, including rights-of-way, road beds, stations, cars, rolling stock, tracks, wagons, horses, office furniture, telegraph and telephone poles, wires, conduits, switchboards, all other property used in carrying on their business and owned by them respectively, all other real and personal property, and all franchises. [MCL 207.5(1)(a).]

The PUTA allows taxed entities several credits against the tax imposed, however. See, e.g., MCL 207.13a and MCL 207.13b. Relevant here, WFRC applied for a maintenance credit (also referred to by the parties as the "rolling stock credit."). See MCL 207.13a. To obtain the maintenance credit, a party seeking it must submit "an application in the form prescribed by" the Commission. MCL 207.13a(3). WFRC's application for the maintenance credit was denied. After the denial, WFRC paid half of the assessed tax under protest. WFRC's payment of half the assessed tax under protest was permitted by MCL 207.15, which WFRC relies on in support of its jurisdictional argument and which provides:

> A person upon whom any tax is levied under the provisions of this act may pay such tax under protest, specifying at the time, in a writing signed by him, the reasons for the protest. The person paying under protest may sue the state in the court of claims within 30 days for the amount protested, and recover if the tax is shown to be unlawful for the reason specified in the protest. Taxes levied under the provisions of this act are unlawful if the average rate has not been ascertained and determined according to law, or if valuation of property was based upon fraud, error of law or the adoption of wrong principles. Any tax recovered may be refunded or applied upon future taxes payable under this act. [MCL 207.15.]

Although the credit provisions relevant to this appeal were added to the PUTA in 2000, see 2000 PA 341, MCL 207.15 was first enacted in 1905, see 1905 PA 282, and has not been amended since 1966, see 1966 PA 208. As the Court of Claims recognized, WFRC focused on the language in MCL 207.15 "expressly purport[ing] to confer on taxpayers who pay under protest the right to 'sue the state *in the court of claims* within 30 days for the amount protested . . . .'" On appeal, WFRC argues that the Court of Claims erred in looking beyond this plain language and should have found that MCL 207.15 conferred jurisdiction on the Court of Claims to preside over its case.

Defendants argue, however, that the jurisdictional language of MCL 207.15 was repealed by implication when the Legislature enacted the TTA. As the Court of Claims correctly noted, the TTA granted the MTT exclusive jurisdiction over property-tax issues "based on either the subject matter of the proceeding (e.g., a direct review of a final decision of an agency relating to special assessments under property tax laws) or the type of relief requested (i.e., a refund or redetermination of a tax under the property tax laws)." *In re Petition of Wayne Co Treasurer for Foreclosure*, 268 Mich App 108, 110-111; 777 NW2d 507 (2009) (quotation marks and citation omitted).

Defendants point to several statutory provisions within the TTA that establish the MTT has exclusive jurisdiction over property-tax issues and that the Legislature meant to divest jurisdiction to hearing such cases from other forums. Most notably, defendants rely on MCL 205.731, MCL 205.707, and MCL 205.774.

MCL 205.731 relates to the jurisdiction of the MTT and provides:

> The tribunal has exclusive and original jurisdiction over all of the following:
>
> (a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state.
>
> (b) A proceeding for a refund or redetermination of a tax levied under the property tax laws of this state.
>
> (c) Mediation of a proceeding described in subdivision (a) or (b) before the tribunal.
>
> (d) Certification of a mediator in a tax dispute described in subdivision (c).
>
> (e) Any other proceeding provided by law.

MCL 205.731 purports to grant the MTT "exclusive and original jurisdiction" over various issues involving "the property tax laws of this state." Under MCL 205.703(f), " '[p]roperty tax laws' does not include the drain code of 1956, 1956 PA 40, MCL 280.1 to 280.630." Thus, the term "property tax laws" found in MCL 205.731 seemingly includes every law relating to property taxes except those found in the Drain Code. This includes the property taxed under the PUTA, such as WFRC's railcars and reporting marks.

MCL 205.707 states: "The provisions of this act are effective notwithstanding the provisions of any statute, charter, or law to the contrary." MCL 205.741 expressly states that "[a] person or legal entity which, immediately before the effective date of this act, was entitled to proceed before the state tax commission or circuit court of this state for determination of a matter subject to the tribunal's jurisdiction, as provided in [MCL 205.731] shall proceed only before the tribunal." MCL 205.774, which further describes an expansion of the MTT's jurisdiction, states:

> The right to sue any agency for refund of any taxes other than by proceedings before the tribunal is abolished as of September 30, 1974. If a tax paid

to an agency is erroneous or unlawful, it shall not be requisite that the payment be made under protest in order to invoke a right to refund by proceedings before the tribunal.

Additionally, MCL 205.779 has language requiring taxpayers to proceed only before the MTT for various actions that could previously be brought before other forums, including the Court of Claims. See *Jackson Community College v Dep't of Treasury*, 241 Mich App 673, 684-685; 621 NW2d 707 (2000). Our Supreme Court has acknowledged that the TTA's language indicates "a clear legislative intent to vest the [MTT] with jurisdiction over matters previously heard in other forums." See *Emmet Co v State Tax Comm*, 397 Mich 550, 555; 224 NW2d 909 (1976). The TTA was enacted in 1973. See 1973 PA 186.

## B. THE COURT OF CLAIMS LACKED SUBJECT-MATTER JURISDICTION BECAUSE THE TTA IMPLICITLY REPEALED MCL 207.15

Despite a presumption against repeal by implication, the Court of Claims correctly concluded that the TTA implicitly repealed MCL 207.15. The jurisdictional grants of the TTA and MCL 207.15 create an irreconcilable conflict. Although the Legislature did not explicitly repeal MCL 207.15, the TTA indicates the Legislature intended to legislate the entire field of tax disputes, giving the MTT original and exclusive jurisdiction over such disputes.

Subject-matter jurisdiction "is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 528; 695 NW2d 508 (2004) (quotation marks and citation omitted).

"In general, repeals by implication are disfavored." *AK Steel Holding Corp v Dep't of Treasury*, 314 Mich App 453, 464; 887 NW2d 209 (2016) (quotation marks and citation omitted). "It is generally presumed that if the Legislature had intended to repeal a statute or statutory provision, it would have done so explicitly." *AK Steel Holding Corp*, 314 Mich App at 464 (quotation marks and citation omitted). Where a party claims that two statutes conflict, we must construe the statutes harmoniously, if possible. *AK Steel Holding Corp*, 314 Mich App at 464.

> Repeal by implication will not be found if any other reasonable construction may be given to the statutes, such as reading *in pari materia* two statutes that share a common purpose or subject, or as one law, even if the two statutes were enacted on different dates and contain no reference to one another. However, a repeal of a statute may be inferred in two instances: (1) where it is clear that a subsequent legislative act conflicts with a prior act; or (2) when a subsequent act of the Legislature clearly is intended to occupy the entire field covered by a prior enactment. [*AK Steel Holding Corp*, 314 Mich App at 464 (citation omitted; brackets omitted).]

See also *Jackson v Mich Corrections Comm*, 313 Mich 352, 357; 21 NW2d 159 (1946) (cleaned up) ("The rule as stated in the foregoing and other decisions involving the question recognizes that if the provisions of a later statute are so at variance with those of an earlier act, or a part thereof,

that both cannot be given effect then the later enactment controls and there is a repeal by implication.").

"Repeals by implication are not favored, but do happen, and, when clear, must be given effect." *Jackson*, 313 Mich at 357 (quotation marks citation omitted). Accordingly, "if there is such repugnance that both [statutes] cannot operate, then the last expression of the legislative will must control." *Id.* at 356. "[T]he latter act operates *to the extent of the repugnancy*, as a repeal of the first . . . ." *Id.* at 357-358 (quotation marks and citation omitted; emphasis in original). In other words, the more recent statute does not repeal the entire conflicting statute, but only implicitly repeals the portions that are in conflict. See *id.*; see also *Metro Life Ins Co v Stoll*, 276 Mich 637, 641; 268 NW2d 763 (1936) ("It is the rule that where two laws in pari materia are in irreconcilable conflict, the one last enacted will control or be regarded as an exception to or qualification of the prior statute."). Notably, "when faced with two statutes that bear on the same subject, our task is not to discern the most logical construction of the more recent statute, but to labor to permit the survival of both enactments if possible." *House Speaker v State Admin Bd*, 441 Mich 547, 571-572; 495 NW2d 539 (1993) (quotation marks and citation omitted); see also *Bloomfield Twp v Kane*, 302 Mich App 170, 176; 839 NW2d 505 (2013) (citation omitted) ("When two statutes or provisions lend themselves to a construction that avoids conflict, that interpretation is controlling.").

Here, the Court of Claims correctly concluded that there is an irreconcilable conflict between MCL 207.15 and MCL 205.731. On its face, MCL 207.15 gives WFRC the ability to sue in the Court of Claims to challenge decisions regarding credits. MCL 205.731, on the other hand, grants the MTT exclusive and original jurisdiction over several matters related to property tax laws. MCL 205.703(f) defines "property tax laws" as broadly including nearly every type of law related to property taxes, save those under the Drain Code. Accordingly, we agree with the Court of Claims that the two statutes conflict with respect to their jurisdictional provisions because one states that a taxpayer "may sue the state in the court of claims," MCL 207.15, while the other directs such challenges to the MTT by virtue of MCL 205.731 and deprives other forums of jurisdiction by virtue of MCL 205.774.

Although there is a strong presumption against a repeal by implication, see *AK Steel Holding Corp*, 314 Mich App at 464, the Court of Claims properly concluded that the Legislature intended for the TTA to occupy the entire field of property tax disputes, thereby divesting the Court of Claims of jurisdiction of cases under the PUTA. MCL 205.731 provides that the MTT's jurisdiction is "exclusive and original" over proceedings for direct review of agency decisions relating to assessments "under the property tax laws of this state."

The Court of Claims found that this case involved an assessment. This was correct. WFRC's arguments rely on its contention that this case does not involve an assessment, but rather, a credit, which is not mentioned in MCL 205.731. Its original complaint and its amended complaint belie this contention. In the relief-requested sections of both of its complaints, WFRC repeatedly references assessments. It sought an order requiring Treasury to "apply the maintenance credit to the 2021 tax assessment," and to "reissue a new tax bill reflecting the correct assessment of the Public Utility Tax in the amount of $0, with the correct statutory [sic] mandated maintenance credit." It also sought a refund of the amount it overpaid under protest. The relief WFRC seeks bears directly on its assessment and request for a refund. Although it involves a

credit, it ultimately relates to an assessment and WFRC's tax bill comes after all credits are factored into it. Accordingly, this case falls squarely within the MTT's exclusive jurisdiction as granted to it by MCL 205.731. Under MCL 205.707, the TTA's provisions apply "notwithstanding the provisions of any statute, charter, or law to the contrary." This encompasses the jurisdiction previously granted to the Court of Claims by MCL 207.15.

MCL 205.774 supports a finding that the Legislature intended to repeal the grant of jurisdiction to the Court of Claims in MCL 207.15 by enacting the TTA. That provision states that "[t]he right to sue any agency for refund of any taxes other than by proceeding before the tribunal is abolished as of September 30, 1974." MCL 205.774. We agree with the Court of Claims that the right to seek a refund in that court of a tax that was paid under protest, as allowed under MCL 207.15, was abolished by the Legislature when it enacted MCL 205.774.

We also agree with the Court of Claims's finding that WFRC's reliance on *Grand Trunk Western R Co v Dep't of Treasury*, 170 Mich App 384; 427 NW2d 580 (1988), was misplaced. That decision did not discuss subject-matter jurisdiction, and the issues in that case related to the Single Business Tax Act, MCL 208.1 *et seq.*, not the PUTA. Given the plain language of MCL 205.731 and MCL 205.774, the enactment of the TTA demonstrates that the Legislature intended to occupy the entire field of property tax laws and where such cases must be heard. *AK Steel Holding Corp*, 314 Mich App at 464. The Court of Claims did not err in finding that MCL 207.15 was repealed by implication when the Legislature enacted the TTA and dismissed the case for lack of subject-matter jurisdiction. The MTT has subject-matter jurisdiction to hear this case; the Court of Claims does not.

Next, WFRC argues that the Court of Claims has jurisdiction because the MTT does not have powers of equity. Because WFRC's suit seeks, in part, an order requiring defendants to apply the maintenance credit and issue a corrected tax bill, it argues that its claims constitute equitable relief outside the MTT's jurisdiction. We disagree.

"[W]hen proceeding under MCL 205.731(a), the tribunal's jurisdiction is determined by the subject matter of the proceeding, not on the type of relief requested." *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 60; 832 NW2d 728 (2013). And although equitable relief may not be directly available from the MTT, nothing in the TTA prohibits a litigant from seeking equitable relief to enforce writs, orders, and directives that the MTT issues. See *Wikman v Novi*, 413 Mich 617, 648; 322 NW2d 103 (1982). In *Hillsdale*, our Supreme Court held that the plaintiffs' request for mandamus, an equitable remedy, did not divest the MTT of jurisdiction. *Hillsdale*, 496 Mich at 60. Likewise, in *Wikman*, our Supreme Court affirmed this Court's decision to remand to the MTT after finding that the circuit court lacked subject-matter jurisdiction to hear a case involving a special assessment, reasoning that the MTT, though lacking the ability to grant equitable relief, could issue orders and directives that parties could seek to enforce through courts of equity. *Wikman*, 413 Mich at 649. Here, WFRC's request for an order requiring defendants to apply the maintenance credit and issue a corrected tax bill, conduct it contends is equitable in nature, does not divest the MTT of jurisdiction. Its requested relief does not require equitable authority, and even if it did, the MTT still had authority to issue orders and directives related to WFRC's requested relief that could be enforced elsewhere. The MTT could have determined whether WFRC timely and properly filed the credit application, concluded whether the amount of the credit sought was supported, and ordered a refund if appropriate.

-8-

Finally, WFRC asserts that any conflict between MCL 207.15 and the TTA should be construed against the taxing authority. It relies on the canon of construction that "where a statute that levies a tax is ambiguous, we construe that statute against the taxing unit." *Wyckoff v Detroit*, 233 Mich App 220, 224-225; 591 NW2d 71 (1998). But the jurisdictional provisions in MCL 207.15 and the TTA are not statutes that levy taxes; they simply address the forum in which a property-tax issue must be heard. Further, any such issue would not come into play until, and if, WFRC's lawsuit was time-barred.

For these reasons, we conclude that the Court of Claims correctly found that it lacked subject-matter jurisdiction over this case.

## IV. DUE PROCESS AND JUDICIAL REVIEW

WFRC argues that it was deprived of due process because the Court of Claims's finding that MCL 207.15 was repealed by implication by the enactment of the TTA effectively denies WFRC judicial review. We agree that without allowing WFRC to now file in the correct forum, the implicit repeal of MCL 207.15 would effectively deny WFRC judicial review, because a petition in the MTT would now be time-barred. Acknowledging that WFRC's filing in the Court of Claims did not toll the period of limitations to file in the MTT, we find that the period is tolled as a matter of equity. See *Ashley Ann Arbor, LLC v Pittsfield Charter Twp*, 299 Mich App 138, 155-156; 829 NW2d 299 (2012). Any failure to comply with the MTT's period of limitations is "the product of an understandable confusion about the proper forum to hear such challenges rather than a negligent failure to preserve its rights." *Id*.

At the outset, both sides agree that WFRC's property interest related to the tax credit and the resultant assessment implicates due process and that due process requires judicial review of an adverse decision on the tax credit. See Const 1963, art 6, § 28; see also MCL 600.631. Both sides also appear to agree that the MTT's review of Treasury's decision to deny the tax credit, and appellate review of any decision by the MTT, would satisfy the requirements for judicial review. See *Midland Cogeneration*, 489 Mich at 91 (stating judicial review applies to administrative agency decisions that are (1) final decisions; (2) where the agency acted in a "judicial or quasi-judicial" capacity, and (3) the decision affected private rights); see also *American States Ins Co v Dep't of Treasury*, 220 Mich App 586, 589-590; 560 NW2d 644 (1996).

"Fundamentally, due process requires that a party receive notice of the proceedings and a meaningful opportunity to be heard." *Duckett v Solky*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357346); slip op at 7 (quotation marks and citations omitted). Article 6, § 28 of the Michigan Constitution provides that "[a]ll final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law." Const 1963, art 6, § 28. The MTT has direct review of "a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, . . . allocation, or equalization, under the property tax laws of this state." MCL 205.731(a). Under MCL 205.753(1), "the [MTT] is the final agency for the administration of property tax laws." And MCL 600.631 states that:

[a]n appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court.

The MTT satisfies these requirements. The ability to pursue its claims in the MTT would preserve WFRC's right to judicial review. WFRC's contention that the Court of Claim's decision denied it due process is premised on its claim that it did not have a right to appeal to the MTT because defendants' decision did not involve an assessment. As discussed earlier, this case *does* involve an assessment, and the case is properly before the MTT.

The real dispute between the parties is about what happens next. WFRC is concerned that the Court of Claims's decision invalidating MCL 207.15 closes the door on judicial review because any complaint before the MTT would now be time-barred. Defendants argue that judicial review *was* available, but because WFRC chose the wrong forum by filing in the Court of Claims under MCL 207.15, review through the MTT is no longer available.

WFRC timely filed in the Court of Claims under MCL 207.15, a provision it believed to be valid. Under MCL 207.15, WFRC had 30 days from its payment-under-protest to file in the Court of Claims. Under other circumstances, upon finding that it lacked subject-matter jurisdiction, the Court of Claims could have transferred WFRC's case to the correct forum, the MTT. See MCR 2.227(A) (providing when a court determines that it lacks subject-matter jurisdiction over a civil action, but some other Michigan court would have jurisdiction of the action, the court may order the action transferred to the other court); *Ashley Ann Arbor, LLC*, 299 Mich App at 156-158 (holding that, in the absence of an administrative rule governing the MTT's conduct when it discovers that it lacks jurisdiction, MCR 2.227(A) provided a mechanism for the MTT to transfer a case to the circuit court); see also *Detroit v Nat'l Exposition Co*, 142 Mich App 539; 370 NW2d 397 (1985) (affirming circuit court's decision to transfer to the MTT a postjudgment motion challenging the validity of a tax assessment).[2] Once a court lacking jurisdiction transfers a case to a court of proper jurisdiction, the case proceeds "as if it had been originally filed there." *Ashley Ann Arbor, LLC*, 299 Mich App at 157 (citation omitted). After finding subject-matter jurisdiction lacking in an otherwise timely filed case, remand to the correct forum is appropriate. See *Wikman*, 413 Mich at 649-654.

Here, however, by the time the Court of Claims decided that MCL 207.15 was implicitly repealed, the limitations period for WFRC to petition the MTT had already lapsed. See MCL 207.735a(6). The relevant TTA provision, MCL 207.735a, has a different triggering event than MCL 207.15. MCL 207.15 requires a person paying tax under protest to file suit in the Court of Claims within 30 days of the day it paid under protest. See MCL 207.15. By contrast, MCL

---

[2] Although cases decided by this Court before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), we may consider them as persuasive authority, *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

205.736a(6) requires a party in interest to file a written petition within 35 days of the agency's final decision, ruling, or determination to invoke the MTT's jurisdiction. See MCL 205.736a(6).

WFRC paid under protest on July 28, 2021, giving it until August 27, 2021 to file suit. By filing on August 26, 2021, it timely filed its complaint in the Court of Claims with one day to spare. But to timely file in the MTT, WFRC would have had to file its petition on August 3, 2021, 35 days after it received its tax bill on June 29, 2021,[3] and three weeks before it filed suit in the Court of Claims. Even if its suit in the Court of Claims had tolled the MTT period of limitations, see MCL 600.5856, WFRC's complaint in the MTT would still be time-barred. This would result in a severe outcome for WFRC, a taxpayer that timely filed in the Court of Claims, under MCL 207.15, a provision it understood to be valid at the time of filing. See *Wikman*, 413 Mich at 652-653;[4] see also *Ashley Ann Arbor, LLC*, 299 Mich App at 155-156.

When confronted with similar circumstances, in *Ashley Ann Arbor, LLC v Pittsfield*, this Court held that the period of limitations could be tolled as a matter of equity. *Ashley Ann Arbor, LLC*, 299 Mich App at 155. There, the plaintiff property owner timely filed its complaint in the MTT challenging a special assessment related to a drain system update. *Id.* at 142-146. But the circuit court had jurisdiction, not the MTT, because the suit involved the drain code. *Id*. at 147-150; see also MCL 205.703(f); MCL 205.731. Although this Court found that filing suit in circuit court tolled the period of limitations, it also held that even if the filing did not toll the period, the Court "would find the period tolled as a matter of equity." *Id.* at 155. Acknowledging that Michigan courts possess equitable power and that "such power has traditionally been reserved for 'unusual circumstances,' " this Court recognized that the plaintiff's case was "the epitome of unusual." *Id.* at 155. Because of confusion surrounding amendments to the TTA, the plaintiff,

---

[3] The amended complaint alleges that WFRC's agent received the tax bill on June 29, 2021, so this is date on which we rely for purposes of calculating the limitations period. Even if we were to rely on the July 12, 2021 letter informing WFRC that the credit application was untimely as Treasury's final decision, ruling, or determination, WFRC would have been required to file its petition with the MTT on August 16, 2021.

[4] The parties argue about the application of *Wikman* to this case. In *Wikman*, this Court remanded to the MTT, and our Supreme Court affirmed. *Wikman*, 413 Mich at 649-654. There, the plaintiff taxpayers successfully sued in circuit court for injunctive relief related to a local special assessment in their city property tax bill. *Id*. at 630. This Court reversed and remanded the case to the MTT. *Id*. The defendant, the City of Novi, appealed to our Supreme Court arguing that the remand was improper because the MTT lacked jurisdiction, since plaintiffs were required to file with the MTT 30 days after the final decision, the tax bill. *Id*. at 650-651, citing MCL 206.735. Our Supreme Court rejected this argument, relying on the fact that the plaintiffs reasonably relied on the city charter's 60-day period of limitations, timely filed within that period of limitations, and that the circuit court acquiring jurisdiction tolled the statute during the pendency of the suit. *Id*. at 653-654. Unlike the provisions at issue in *Wikman*, the TTA implicitly repealed MCL 207.15. To the extent that *Wikman* acknowledged a litigant's reasonable reliance, we find it persuasive, because WFRC reasonably relied on an ostensibly valid statute to timely file suit in what we have since determined was the wrong venue. The facts and equity analysis in *Ashley Ann Arbor, LLC* are more applicable to this case.

-11-

township, and MTT hearing referee believed jurisdiction was vested in the MTT. *Id.* Until the appeal, no court had determined that the action had to proceed before the circuit court. *Id.* at 156. Relying on these facts, this Court held that application of equity was warranted because the errors were the result of "the preexisting jumble of convoluted case law through which the plaintiff was forced to navigate." *Id.*, quoting *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590 n 65; 702 NW2d 539 (2005).

Just such a "preexisting jumble" of laws was at issue in this case. Here, at the time of the tax dispute, there were two ostensibly valid statutes: one placing jurisdiction in the Court of Claims and one in the MTT. The parties had no way of knowing that the Court of Claims and this Court would conclude that MCL 207.15 was implicitly repealed. WFRC reasonably relied on MCL 207.15 to timely file its case with the Court of Claims. If the statutes of limitations had the same triggering event, WFRC's timely-filed complaint would have tolled the period of limitations for the MTT. Without equitable tolling, there is no way to preserve WFRC's right to judicial review.

We, therefore, find that WFRC's timely-filed complaint in the Court of Claims and timely-filed appeal equitably tolled the period of limitations. We remand WFRC's complaint to the MTT for consideration as a timely-filed petition.

## V. CONCLUSION

For the reasons stated above, we affirm the Court of Claims's conclusion that it lacked subject-matter jurisdiction. We exercise our powers in equity to remand to the Michigan Tax Tribunal for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly